IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CHERI G.,[1]<br><br>               Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>               Defendant. | Case No. 3:21-cv-00060-RRB<br><br>**ORDER of REMAND**<br>**(Docket 17)** |

## I.   INTRODUCTION

Claimant, Cheri G., originally filed applications for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income benefits ("SSI") in 2012, alleging disability beginning December 29, 2011.[2] Claimant's applications have been denied repeatedly, and she now seeks relief from this Court.[3] She argues that the determination by the Social Security Administration ("SSA") that she is not disabled,

---

[1] Plaintiff's name is partially redacted pursuant to Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), *available at https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf*.
[2] Tr. 437, 444.
[3] Dockets 1, 15.

within the meaning of the Social Security Act ("the Act"),[4] is not supported by substantial evidence and that the Administrative Law Judge ("ALJ") committed legal errors. Claimant seeks a reversal of the decision by the SSA and a remand for calculation of benefits.

The Commissioner of the SSA ("Commissioner") has filed a responsive brief requesting remand for further proceedings.[5] Claimant has replied.[6] For the reasons set forth below, Claimant's Motion for Remand at **Docket 17** is **GRANTED IN PART,** the Commissioner's final decision is **VACATED,** and the case is **REMANDED** to the SSA as explained below.

## II. DISCUSSION

Claimant was born on August 13, 1973, and was 38 years old on her alleged disability onset date of December 29, 2011, and is 47 years old as of this date. She initially alleged disability due to a work-related back injury.[7] In 2013, she reported a rapid decline in her physical and mental stability, noting more pain, more difficulty standing and walking, increased medication, irrational thinking, memory problems, and medication side effects.[8] As of September 2019, she alleged medically determinable severe impairments including disorders of the spine, degenerative disc disease, neuropathy, carpal tunnel syndrome, major depressive disorder, general anxiety disorder, and fibromyalgia.[9] Her date last insured is September 30, 2017.[10]

---

[4] 42 U.S.C. § 423; 42 U.S.C. § 1381.
[5] Docket 22.
[6] Docket 23.
[7] Tr. 147.
[8] Tr. 500.
[9] Tr. 2726.
[10] Tr. 2698.

*Cheri G. v. Kijakazi*                                                                     Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings                    Page 2
Case 3:21-cv-00060-RRB    Document 25    Filed 04/11/22    Page 2 of 19

A.  Background

This matter has languished in the system for almost a decade. Claimant originally applied for SSDI on June 19, 2012, and for SSI shortly thereafter, alleging disability beginning December 29, 2011.[11] Following two hearings before ALJ Paul Hebda in 2013 and 2014, ALJ Hebda issued a decision finding Claimant not disabled.[12] The Appeals Council remanded the claims back to ALJ Hebda to consider evidence submitted after the decision. Following two additional hearings in 2016, ALJ Hebda issued a second decision finding Claimant was not disabled on January 20, 2017.[13] Claimant appealed this decision to the U.S. District Court for the District of Alaska ("The first appeal").[14]

While the first appeal was pending, Claimant filed new claims for benefits on June 2, 2017, again alleging that her disability began on December 29, 2011.[15] The new claims were denied in October 2017.[16] In August 2018, the Honorable Sharon L. Gleason remanded the first appeal to the ALJ for further proceedings, finding that although the ALJ had failed to credit to treating providers' opinions, it also was not clear from the record that Claimant was disabled. Accordingly, an award for immediate benefits was not appropriate.[17]

Upon remand, the case was assigned to ALJ Cecilia LaCara. ALJ LaCara determined that the 2012 applications and the 2017 applications were "folded in" to the

---

[11] Tr. 437, 444.
[12] Tr. 177–92.
[13] Tr. 16–34.
[14] Case No. 3:17-cv-00126 SLG; Tr. 2330.
[15] Tr. 2523, 2532.
[16] Tr. 2429.
[17] Tr. 2417.

*Cheri G. v. Kijakazi*  Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings  Page 3
Case 3:21-cv-00060-RRB   Document 25   Filed 04/11/22   Page 3 of 19

remand.[18] A hearing was held on September 17, 2019,[19] and on November 22, 2019, ALJ LaCara entered a written order finding Claimant was "not disabled."[20] Claimant once again has appealed to the U.S. District Court, and the second appeal was randomly assigned to the undersigned for consideration. The parties agree that the ALJ erred and that remand is necessary, but disagree as to the appropriate nature of remand: an award of benefits, or further proceedings.

**B.     Determination of Disability**

Disability is defined in the Act as:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[21]

The Act provides for the payment of disability benefits to individuals who have contributed to the social security program and who suffer from a physical or mental disability.[22] The Commissioner has established a five-step process for determining disability within the meaning of the Act.[23] A claimant bears the burden of proof at steps one through four in

---

[18] Tr. 2197.
[19] Tr. 2194–246.
[20] Tr. 2176.
[21] 42 U.S.C. § 423(d)(1)(A).
[22] 42 U.S.C. § 423(a).
[23] 20 C.F.R. § 404.1520(a)(4).

*Cheri G. v. Kijakazi*                                                                                                    Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings                                                                             Page 4
Case 3:21-cv-00060-RRB   Document 25   Filed 04/11/22   Page 4 of 19

order to make a *prima facie* showing of disability.[24] If a claimant establishes a *prima facie* case, the burden of proof then shifts to the agency at step five.[25]

C.     ALJ Decision

Applying the 5-step process, ALJ LaCara concluded that: **Step 1**, Claimant had not engaged in substantial gainful activity since her alleged onset date; **Step 2**, Claimant suffered from severe impairments, including degenerative disc disease of the lumbar and cervical spines, obesity, hypertension, headache, depression NOS, anxiety NOS, personality disorder cluster B traits, and prescription narcotic overuse; and **Step 3**, Claimant's severe impairments did not meet any medical listings.[26]

Before proceeding to Step 4, a claimant's residual functional capacity ("RFC") is assessed. RFC is the most someone can do despite their mental and physical limitations.[27] In determining a claimant's RFC, the ALJ must base findings on "all of the relevant medical and other evidence," including a claimant's testimony regarding the limitations imposed by his impairments.[28] This RFC assessment is used at both Step Four and Step Five.[29] In evaluating her RFC, the ALJ concluded that Claimant had the capacity

---

[24] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).
[25] *Treichler*, 775 F.3d at 1096 n.1.
[26] Tr. 2150–55. These findings are virtually identical to the 2017 findings by ALJ Hebda, who included "migraine headache" in addition to "headache" in his severe impairment findings. Tr. 19.
[27] *Berry v. Astrue*, 622 F.3d 1228, 1233 (9th Cir. 2010); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).
[28] 20 C.F.R. § 404.1545(a)(3).
[29] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

*Cheri G. v. Kijakazi*     Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings     Page 5
Case 3:21-cv-00060-RRB    Document 25    Filed 04/11/22    Page 5 of 19

to perform sedentary work, limited to "simple, routine, repetitive tasks with only occasional interaction with the public and coworkers, but no tandem tasks."[30]

At **Step 4**, the ALJ found that Claimant could not perform her past relevant work as a medical assistant, dialysis technician, nurse assistant/aide, or teacher aide.[31] At **Step 5** the burden of proof shifts to the Commissioner.[32] With the assistance of a vocational expert ("VE"), the ALJ concluded that Claimant was able to perform sedentary work in the national economy, such as document preparer, clerical addresser, and surveillance system monitor.[33] Accordingly, the ALJ concluded that Claimant was not disabled.

**D.     Analysis**

   **1.     Positions of the parties**

Claimant contends that the ALJ erred at Step 2 (thus impacting the RFC) with respect to her fibromyalgia and myofascial pain syndrome; at Step 3, in the evaluation of Claimant's headaches; and at Step 5 in relying on the testimony of the VE, who provided jobs that exist outside of Claimant's RFC.[34]

The Commissioner concedes that "the ALJ inadvertently missed some of the assessed limitations . . . and did not review or discuss some records regarding [Claimant's] functioning,"[35] arguing that these errors require remand for the ALJ to further develop the

---

[30] Tr. 2155–74.
[31] Tr. 2174–75. The Court notes that ALJ Hebda determined in January 2017 that Claimant was capable of a *medium* RFC, and *could* perform her past relevant work. Tr. 24, 33.
[32] *Treichler*, 775 F.3d at 1096 n.1.
[33] Tr. 2175–76.
[34] Docket 17 at 1.
[35] Docket 22 at 8.

*Cheri G. v. Kijakazi*                                                                                        Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings                                                                          Page 6
Case 3:21-cv-00060-RRB    Document 25    Filed 04/11/22    Page 6 of 19

record, reevaluate Claimant's alleged symptom complaints, and perform a new five-step analysis, including determining a new RFC.[36] The Commissioner argues that "there are unresolved issues, the ALJ has provided legally sufficient reasons for at least some of [her] findings, and the record casts doubt on [Claimant's] allegation that she is totally disabled."[37] As examples, the Commissioner alleges evidence of **malingering, symptom magnification, drug seeking behavior, failure to follow treatment recommendations, inconsistencies between the record and Claimant's testimony, and activities inconsistent with disability**.[38] In short, the Commissioner argues that remand for further proceedings is necessary because "the record does not clearly indicate whether [Claimant's] impairments limit her from all work."[39] But the Commissioner fails to make reference to the record, relying only on the ALJ's findings as to the foregoing, despite the Commissioner's concession that the ALJ's analysis of the record was inadequate.

The Court has reviewed the ALJ's findings, and takes issue with the Commissioner's summary in bold above. The ALJ found that Claimant engaged in "a number of daily activities," including personal hygiene, laundry, vacuuming, and light housework.[40] These activities are not inconsistent with disability.[41] Although the Commissioner alleges evidence of "drug seeking behavior," the Court finds no such

---

[36] Docket 22 at 3.
[37] *Id.* at 5.
[38] *Id.* at 5–6.
[39] *Id.* at 9.
[40] Tr. 2157.
[41] "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

*Cheri G. v. Kijakazi*  Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings  Page 7
Case 3:21-cv-00060-RRB   Document 25   Filed 04/11/22   Page 7 of 19

allegation in the ALJ opinion. Rather, although the ALJ suggested that Claimant used prescribed opioids for a long time, the ALJ used an *absence* of prescribed opioid medication in Claimant's March 2018 drug screen as evidence of non-compliance.[42] The ALJ also faulted Claimant for failure to fill prescriptions for Percocet and Flexeril in December 2011, "because she did not like to take medications."[43] Moreover, the medical records reflect that Claimant sought to *reduce* her reliance on opiates,[44] and in 2015 and 2016 at least two providers noted a "low risk for opiate abuse."[45] Allegations of malingering and symptom magnification were by no means universal among providers. In any event, such "unresolved issues" are more relevant to Claimant's onset date, than to whether or not she was disabled, as discussed below.

### 2. Listed impairment

Claimant alleges that her headache disorder is the equivalent of Listing 11.02B.[46] Social Security Ruling ("SSR") 19-4p, explains that "Primary headache disorder is not a listed impairment in the Listing of Impairments (listings); however, we may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing," specifically, Listing 11.02. Claimant complains

---

[42] Tr. 2161.
[43] Tr. 2162.
[44] Tr. 2811, 2086.
[45] Tr. 1769, 2031.
[46] Docket 17 at 10–15.

*Cheri G. v. Kijakazi*  Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings  Page 8
Case 3:21-cv-00060-RRB   Document 25   Filed 04/11/22   Page 8 of 19

that the ALJ accepted her headaches as a severe impairment, but improperly determined that Claimant did not meet the equivalent signs and limitations of Listing 11.02.[47]

The Court takes judicial notice that SSR 19-4p became effective on August 26, 2019,[48] two years after Judge Gleason made her finding that it was not clear from the record that Claimant was disabled.[49] Accordingly, the failure of Judge Gleason to find Claimant's condition met a listed impairment has no precedential value. The September 17, 2019, ALJ hearing that led to this appeal was held less than a month after SSR 19-4p issued.[50] The ALJ acknowledged SSR 19-4p, but dedicated only one paragraph to Listing 11.02.[51]

Listing 11.02B describes seizures, but also is applicable via SSR 19-4p to headaches "occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." The November 2019 ALJ opinion addressed Claimant's history of headaches by citing four medical records—one dated October 2012, and three from early 2016.[52] The ALJ opinion made a point of acknowledging "stress headaches," as distinct from "migraine headaches," and found that Claimant suffered only

---

[47] Docket 17 at 10. During the September 2019 hearing, the medical expert, Dr. Campbell, made note of Claimant's migraines, and opined that this was a "medically-determinable impairment," but noted that she "did not see it under a particular listing," without addressing Listing 11.02. Tr. 2227.
[48] https://www.ssa.gov/OP_Home/rulings/di/01/SSR2019-04-di-01.html.
[49] Tr. 2417.
[50] Tr. 2194.
[51] Tr. 2153.
[52] Tr. 2151, citing Exhibits 22F/4 (Initial headache diagnosis 10/29/12, Tr. 1325-29); 47F/5 (Health status report form dated 10/29/12, indicates "PT appears to be in chronic pain continuously."); 61F-1 (1/7/16 office visit for "chronic migraine," Tr. 1936); 64F/1-2 (2/24/16 office visit for "chronic migraine"); and 78F/7 (4/11/2016 Neurology record. Brain MRI ordered due to chronic migraine.).

*Cheri G. v. Kijakazi*  Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings  Page 9
Case 3:21-cv-00060-RRB   Document 25   Filed 04/11/22   Page 9 of 19

from the former.[53] Notably, SSR 19-4p discusses how to establish that a claimant has a medically determinable impairment of a "***primary headache disorder***," not a "migraine disorder."

To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, the SSA considers:

> **[A] detailed description from an AMS of a typical headache event, including all associated phenomena** (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); **the frequency of headache events; adherence to prescribed treatment; side effects of treatment** (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and **limitations in functioning that may be associated with the primary headache disorder or effects of its treatment**, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).[54]

The ALJ opined that the record did "not appear" to contain the foregoing,[55] finding generally that "there is no evidence that the claimant's headaches occur at least once per week for at least three consecutive months despite adherence to prescribed treatment."[56] But Claimant argues that the record contains evidence contradicting the ALJ's conclusion, and argues that she meets the B criteria of Listing 11.02.[57] Specifically, Claimant identified numerous medical records dated from 2012 through 2019, detailing the progression and

---

[53] Tr. 2151. The ALJ opined that although Dr. Campbell testified that migraines were a medically determinable impairment, "this seems dubious." *Id.*
[54] SSR 19-4p at 4 (emphasis added).
[55] Tr. 2151.
[56] Tr. 2153.
[57] Docket 17 at 11.

*Cheri G. v. Kijakazi* Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings Page 10
Case 3:21-cv-00060-RRB   Document 25   Filed 04/11/22   Page 10 of 19

treatment of her headaches/migraines. In support of her argument, Claimant's brief summarizes headache-related medical records dating from May 2012 through July 2019, arguing that this evidence, which was before the ALJ, "demonstrated that [Claimant] had experienced severe headaches on an almost-daily basis over the course of several years despite following all of the treatment recommendations, including prophylactic and as-needed medications."[58]

### 3. Medical records

The Court has independently reviewed the relevant medical records and notes as follows.[59] The first "bad headache" was noted by her chiropractor in **May 2012**.[60] In October 2012, Claimant was seen by Dr. Chandler at AA Spine & Pain Clinic for an "initial evaluation for the primary complaint of headache, neck pain, and generalized body pain."[61] In **February 2013**, "frequent headaches" were noted by her Nurse Practitioner.[62]

By **December 2015**, despite continued use of prescribed opioids for pain, she reported *daily headaches* "turning into migraines," and expressed desire for alternative treatment options, with her provider noting nausea as a side-effect of the opioids.[63]

---

[58] Docket 17 at 12–14.
[59] Key phrases relevant to SSR 19-4p are italicized below by the Court.
[60] Tr. 1040–42.
[61] Tr. 1325.
[62] Tr. 1544.
[63] Tr. 2811.

*Cheri G. v. Kijakazi*     Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings     Page 11
Case 3:21-cv-00060-RRB    Document 25    Filed 04/11/22    Page 11 of 19

**In January 2016** she saw Dr. Shanley for "chronic migraine without aura without status migrainosus, not intractable."[64] Dr. Shanley noted "*daily headaches*" requiring twice daily Ibuprofen for "a few months."[65]

**On February 24, 2016,** Claimant presented to Dr. Penn for "ongoing migraine since last night," noting that the pain escalates to 8–10/10 in minutes.[66] She reported *daily headaches* for at least 2–3 months, with "associated *sensitivity to light and sound*."[67] Dr. Penn recommended Excedrin Migraine, and suggested she contact Dr. Ellenson at Alaska Neurology.[68] She was due for a Cervical MRI with her pain doctor for evaluation of cervical spine stenosis. An occipital nerve block, and a cervical branch block, were scheduled for March.[69] Dr. Penn assessed *chronic migraines*, and scheduled a follow-up in two weeks.

**In March 2016**, Claimant returned to PFMC "for chronic headache," noting that she has tried *various migraine medications with no relief*.[70] She expressed a desire to decrease her pain medication regimen, as it was "not providing enough benefit at this point."[71] Chelsey Jacobs, PA-C, assessed "*chronic intractable [hard to control]*

---

[64] Tr. 1936.
[65] Tr. 2081.
[66] Tr. 2083. Dr. Penn and Dr. Shanley were both providers at Providence Family Medicine Center (PFMC).
[67] Tr. 2083.
[68] Tr. 1949.
[69] Tr. 2083.
[70] Tr. 2085.
[71] Tr. 2086.

*Cheri G. v. Kijakazi*  Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings  Page 12
Case 3:21-cv-00060-RRB   Document 25   Filed 04/11/22   Page 12 of 19

*headache*," and recommended follow-up with neurology and tapering pain medication.[72] An ongoing relationship with Algone Pain Clinic was noted.[73]

**By April 2016**, Claimant noted "*no improvement* with sleep or headaches," and PA Jacobs increased her Amitriptyline.[74] Claimant was seen at Alaska Neurology Center regarding her headache pain, which she reported last anywhere from 2 hours to three days at a time, with *photophobia and occasional nausea*.[75] Dr. Ellenson ordered a brain MRI "to rule out a structural lesion given the new migraine problem."[76] This MRI came back "normal."[77]

**In July 2016**, Claimant was still reporting *daily headaches*. She noted that Topamax worked well for a few weeks, but then the headache returned, with sensitivity to light and sound.[78] Cheryl Fitzgerald, PA-C, again noted *chronic headaches* in **August 2016**, and recommended "Iovera [localized nerve block] of the greater occipital nerves when it arrives. Short relief with ONB [occipital nerve block]."[79] Claimant followed up with Dr. Ellenson at Alaska Neurology, who noted that a trial of Topiramate had improved Claimant's headaches for a period of time, with *blurred vision and diplopia* (double vision).[80] Claimant did not refill the prescription, because the migraines returned while

---

[72] Tr. 2088.
[73] Tr. 2088. Records from Algone Pain Clinic addressed monthly pain management throughout the administrative record.
[74] Tr. 2089.
[75] Tr. 2101.
[76] Tr. 2104.
[77] Tr. 2109.
[78] Tr. 2089–90.
[79] Tr. 2031.
[80] Tr. 2106.

*Cheri G. v. Kijakazi*     Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings     Page 13
Case 3:21-cv-00060-RRB   Document 25   Filed 04/11/22   Page 13 of 19

she was still taking it. Dr. Ellenson recommended she try it again, and "if this is not helpful then a trial Botox would be appropriate."[81] In late August, Claimant was evaluated by Neuropsychologist Russell Cherry, PsyD, who opined that she had been prescribed "*far too many sedating medications*," and made other recommendations unrelated to headaches.[82]

In **December 2016**, Dr. Ellenson again saw Claimant regarding "*migraine headaches* which she has been experiencing for the *past year*."[83] Claimant did not find relief from Topiramate, morphine, or Excedrin migraine.[84] "She continues to have a frontal *daily migraine headache* that last at least four hours associated with *photophonophobia*."[85]

In **April 2017,** Claimant returned to Dr. Ellenson for "*chronic daily migraine headaches*."[86] Her headaches were somewhat improved on propranolol, as she was not having them every day.[87] But by **August** her headaches had returned.[88] In **December 2017** she reported headaches "*half the days of the month*" that "last all day" despite the propranolol, and are accompanied by *vomiting and photophonophobia*.[89] Dr. Ellenson increased the propranolol dosage and scheduled Botox therapy.[90]

---

[81] Tr. 2109.
[82] Tr. 2111–27.
[83] Tr. 3220.
[84] Tr. 3220.
[85] Tr. 3223.
[86] Tr. 3225.
[87] Tr. 3225–28.
[88] Tr. 2764.
[89] Tr. 3230–33.
[90] Tr. 3234.

*Cheri G. v. Kijakazi*     Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings     Page 14
Case 3:21-cv-00060-RRB    Document 25    Filed 04/11/22    Page 14 of 19

The record reflects Botox injections to treat migraine headaches, in addition to propranolol, in **January, April, and July 2018.** She continued to report headaches "over 15 days per month" in **January**.[91] Finding some relief, she received additional Botox in **April**,[92] but found it less effective.[93] A third Botox treatment was administered in **July**.[94] Finding *decreasing relief with each treatment*, she took "a break off Botox," during which time her headaches worsened, so she returned for another treatment in **May 2019**.[95] This is where the medical records end with respect to headaches, and the ALJ held a hearing four months later.[96] The ALJ took no new testimony from Claimant, relying instead on Claimant's transcribed testimony from prior hearings.[97]

4. **Errors by the ALJ**

The foregoing summary of Claimant's history of chronic headache treatment stands in sharp contrast to the ALJ's conclusion that "claimant eventually got good relief with propranolol starting in 2017 and Botox in April 2018."[98] Moreover, the records fulfill the requirements of SSR 19-4p as early as December 15, 2015, when, despite continued use of prescribed opioids for pain, she reported *daily headaches* "turning into migraines," and expressed desire for alternative treatment options, with her provider noting nausea as a side-effect of the opioids.[99] From December 2015 forward, the records contain

---

[91] Tr. 3242.
[92] Tr. 3259.
[93] Tr. 3264, 3183.
[94] Tr. 3267.
[95] Tr. 3269.
[96] Tr. 2194.
[97] This was, itself, error in light of the new guidance from SSR 19-4p since the prior hearing.
[98] Tr. 2157
[99] Tr. 2811.

*Cheri G. v. Kijakazi*　　　　　　　　　　　　　　　　　　　　　　　　　　　Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings　　　　　　　　　　　　　　　　　　　　　　　Page 15
Case 3:21-cv-00060-RRB　　Document 25　　Filed 04/11/22　　Page 15 of 19

consistent, detailed descriptions from multiple medical providers of Claimant's "typical headache event" and associated phenomena (lasting anywhere from hours to days, accompanied by nausea and vomiting with sensitivity to light and sound); the frequency of headache events (daily, occurring "half the month"); adherence to prescribed treatment (no physician suggested Claimant was not complying with the numerous prescribed headache remedies); side effects of treatment (nausea from opioids; blurred and double vision with Topiramate); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment (which seem obvious, given daily headaches with nausea, vomiting, and sensitivity to light and sound.).[100] Significantly, the Commissioner's brief does not address Listing 11.02 or SSR 19-4p.[101]

### 5. Nature of remand

The parties agree that the ALJ has failed to provide legally sufficient reasons for rejecting evidence, but disagree as to the appropriate remedy. While Claimant seeks a remand for a finding of disability and award of benefits, the Commissioner contends that further proceedings are warranted.[102]

The Ninth Circuit has emphasized that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court."[103] "Where there is conflicting evidence, and not all essential

---

[100] SSR 19-4p at 4 (emphasis added).
[101] Docket 22.
[102] *Id.* at 2.
[103] *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) *citing Marsh v. Colvin,* 792 F.3d 1170, 1173 (9th Cir.2015).

*Cheri G. v. Kijakazi* Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings Page 16
Case 3:21-cv-00060-RRB   Document 25   Filed 04/11/22   Page 16 of 19

factual issues have been resolved, a remand for an award of benefits is inappropriate."[104] Further proceedings generally are useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence "may well prove enlightening."[105] The Commissioner argues that "since unresolved issues remain, it is not known what impact a consideration of the complete record would have on a disability determination and the record cannot be said to have been fully developed, making a finding of disability at this time hasty."[106] The Court disagrees.

If an impairment is the equivalent of one of the listed impairments and meets the duration requirement, a claimant is conclusively presumed to be disabled, because *"[c]onditions contained in the 'Listing of Impairments' are considered so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs."*[107] A "finding of equivalence must be based on *medical evidence only*."[108] The regulations instruct that "medical equivalence [is] based on all evidence in your case record about your impairment(s)," including symptoms, signs, and laboratory findings.[109] If any "severe" impairment equals a listed impairment, the claimant must be found to be disabled.

---

[104] *Brown-Hunter*, 806 F.3d at 496, citing *Treichler,* 775 F.3d at 1101.
[105] *Treichler,* 775 F.3d at 1101 (citations omitted).
[106] Docket 22 at 8.
[107] *Lester v. Chate*r, 81 F.3d 821, 828 (9th Cir. 1995), *as amended* (Apr. 9, 1996); *see also* 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").
[108] *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001), citing 20 C.F.R. § 404.1529(d)(3) (emphasis added).
[109] "[W]e will consider medical equivalence based on all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding. In considering whether your **symptoms,**

*Cheri G. v. Kijakazi* Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings Page 17
Case 3:21-cv-00060-RRB   Document 25   Filed 04/11/22   Page 17 of 19

The ALJ must proceed to the final two steps in the sequential evaluation process only if a decision as to whether a "severe" impairment corresponds to a listed impairment cannot be made on medical factors alone.[110] Although it is the claimant's burden at step three, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment."[111]

In this case, the ALJ's failure to consider the medical records before her does not warrant yet another remand when the records speak for themselves. The ALJ considered medical equivalency, and acknowledged the potential applicability of Listing 11.02, but then failed to acknowledge the medical evidence present in the record. As discussed above, the records clearly reflect headaches "occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment," thus satisfying Listing 11.02B as applicable via SSR 19-4p.

This Court should credit evidence that was rejected during the administrative process if the ALJ failed to provide legally sufficient reasons for rejecting the evidence.[112] The Court can remand for an immediate award of benefits if (1) "there are no outstanding issues that must be resolved before a determination of disability can be made;" and (2) "it

---

***signs, and laboratory findings*** are medically equal to the symptoms, signs, and laboratory findings of a listed impairment, we will look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria. However, ***we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding*** to raise the severity of your impairment(s) to that of a listed impairment. If the symptoms, signs, and laboratory findings of your impairment(s) are equivalent in severity to those of a listed impairment, we will find you disabled. If it does not, we will consider the impact of your symptoms on your residual functional capacity." 20 C.F.R. § 404.1529(d)(3).

[110] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).
[111] *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).
[112] *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *Treichler*, 775 F.3d at 1100–02.

*Cheri G. v. Kijakazi*  Case No. 3:21-cv-00060-RRB
Order Remanding for Further Proceedings  Page 18
Case 3:21-cv-00060-RRB   Document 25   Filed 04/11/22   Page 18 of 19

is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."[113] Such is the case here.

The Court has reviewed the administrative record and finds that it is adequately developed as to Claimant's primary headache syndrome. Moreover, the Court finds that the record, taken as a whole, leaves "not the slightest uncertainty" that Claimant met the listed impairment 11.02B **as of December 15, 2015**, when Claimant began frequently returning to her physicians complaining of daily headaches with significant associated symptoms (vomiting and sensitivity to light and sound), and for which her treating providers continually prescribed new treatments with which Claimant was compliant.

### IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Claimant's motion at **Docket 17** is **GRANTED IN PART,** and this matter is **REMANDED** for payment of benefits **effective December 15, 2015.** Nothing about this order precludes Claimant from exercising her right to return to the ALJ for consideration of an earlier onset date, in light of the agreement between the parties that the ALJ committed errors with respect to Claimant's other alleged impairments.

IT IS SO ORDERED this 11th day of April, 2022, at Anchorage, Alaska.

*/s/ Ralph R. Beistline*
RALPH R. BEISTLINE
Senior United States District Judge

---

[113] *Benecke*, 379 F.3d at 593.